[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Review of the File
This matter first came to the court by a pro se summons and complaint which was dated May 8, 2001 and filed May 18, 2001 in which complaint the plaintiff petitioner sought a dissolution of the marital union, a fair division of property and debts, child support, visitation and joint legal custody as concerns the minor child. To the complaint was attached the usual automatic orders. The defendant accepted service of the writ, summons and complaint apparently at the office of the clerk before Jorene Couture. The usual parenting orders were entered.
The plaintiff appeared by counsel by virtue of an appearance that was signed June 1, 2001 and filed with the court on June 6, 2001. At the same time counsel for the plaintiff filed a motion for custody and support pendente lite, a motion for exclusive use and possession of family residence, a motion for a restraining order pendente lite directed against the defendant, a motion for accounting and return of personal property pendente lite.
By virtue of an appearance signed on June 15, 2001 and filed June 18, 2001, the defendant appeared by counsel and on June 18, 2001, counsel for the defendant filed a motion for joint custody and specific parenting plan, alimony and an allocation of debt, a motion for return of dealer plate pendente lite. Subsequently, a request for extension of time was filed by counsel for the defendant.
By virtue of a form filed August 2, 2001, it was verified that the plaintiff had completed the parenting education program.
On September 26, 2001, counsel for the plaintiff filed a motion for custody and support and on November 13, 2001 the court, Devine, J., entered an order of child support in favor of the plaintiff and against the defendant in the amount of $47.00 per week. No retroactivity was CT Page 12791 ordered. On the same date, the court entered an order of joint legal custody with primary residence of the minor child with the plaintiff mother.
On September 26, 2001, plaintiff's counsel filed a motion for exclusive use and possession of the family residence.
On September 26, 2001, the defendant's counsel filed a motion for joint custody and specific parenting plan, alimony and an allocation of debt pendente lite.
On November 13, 2001, the court, Devine, J., denied the defendant's request for alimony.
On October 12, 2001, the plaintiff's counsel filed a motion to enjoin pendente lite but it appears that the motion was not acted upon.
On October 30, 2001, the defendant's counsel filed a motion for contempt pendente lite making certain claims. The file reflects that the motion was not acted upon.
On November 7, 2001, plaintiff's counsel filed a motion to compel. The file does not reflect that the motion was acted upon. At the same time, a financial affidavit as concerns the financial status of the plaintiff was filed at that time, as well as a financial affidavit of the defendant.
On November 14, 2001, a motion for appraisal of the marital residence at 24 Huntington Place in Norwich was filed by counsel for the defendant and a stipulation incident thereto was accepted by the court on February 11, 2002 by the court, Devine, J.
On November 15, 2001, defendant's counsel filed a motion for reargument as concerns certain orders earlier entered by the court. The motion for reargument was denied by the court, Devine, J., on December 5, 2001.
On January 16, 2002, the defendant filed a motion for contempt which resulted in the execution of a stipulation between the parties and their counsel as concerns an appraisal of the marital residence. The same to be done at the expense of the defendant.
By motion dated May 6, 2002, the plaintiff requested an order of the court directing that the defendant undergo a vocational evaluation by plaintiff's expert. An objection thereto was posed by counsel for the defendant. CT Page 12792
On May 15, 2002, new counsel appeared for the defendant. On May 15, 2002, the defendant by counsel filed a motion for access to the jointly owned marital property in order to videotape the contents thereof.
On September 27, 2002 and on October 1, 2002, the plaintiff and the defendant with their respective attorneys appeared before the court and the matter was heard to a conclusion.
The court makes the following findings of fact:
The plaintiff and the defendant were united in marriage on February 14, 1981 in East Greenwich, Rhode Island. At the time of the marriage, the plaintiff's birth name was Louise Elizabeth Behan. Both the plaintiff and defendant have resided in this state for more than 12 months prior to the filing of the subject petition.
There are two children that were born issue of this marital union; namely, Carl J. DelVecchio born December 28, 1983, who manifestly is now age 18, and is at the present time not residing in the marital home. The second child is Isabelle V. DelVecchio born April 2, 1986; that child is currently 16-1/2 years old and resides with the plaintiff petitioner mother.
The original petition indicates, and the testimony is to the effect, that the parties have not been the recipients of any public assistance or welfare from any town, city, state, municipality or subdivision thereof. The court has already touched on the content of the prayer for relief.
The court notes that in this proceeding no answer to the original complaint or cross complaint was ever filed.
From the testimony of the plaintiff. the court finds that the minor child Isabelle is presently a junior at Norwich Free Academy.
The son Carl, age 18, is presently involved in certain legal matters.
According to the testimony, the defendant left the marital residence on March 27, 2001. The plaintiff and the minor daughter Isabelle have continued to reside there and there has been a pattern of visitation between the defendant and the minor child Isabelle which occurs usually on Thursday evenings.
The plaintiff is employed by an entity known as Dominion Nuclear. She has been so employed by said corporation for the last six years and her position is that of a material specialist. CT Page 12793
The plaintiff's age is 42. She characterized her physical health as being all right but noted that she had pneumonia last year.
The plaintiff suffers from emotional problems of a generalized nature including anxiety disorders and at one point recently entered Backus Hospital.
The plaintiff suffered certain emotional distress that required therapy in 1996 at such time as she lost her parent father.
It was the plaintiff's claim that the defendant has been emotionally violent to her.
The plaintiff has continued intermittently in therapy from 1996 to the present time. She visits Backus Hospital or private therapy facilities once a week. The plaintiff's medication regimen consists of Conapin and Paxel.
Before the noted separation date, the plaintiff complained that the defendant continually checked on her conduct, read the mileage of the speedometer of the vehicle that she operated, and made constant calls at her place of employment.
The plaintiff indicated that the defendant would make accusations against her without justification and that the defendant was verbally profane to the plaintiff on a daily basis.
Prior to her present position of employment, the plaintiff had been more of a continual parent in the sense of looking after the home and the children. The adult son Carl, according to the plaintiff's testimony, had many problems.
The plaintiff initially returned to the work place when the children were ages 3 and 5.
At one point in her career, the plaintiff worked for Metropolitan Life.
For 17 years the defendant worked for the firm known as Griggs and Browne. The defendant left that firm in January of 1998 but not as a result of any improper conduct on his part. The defendant subsequently filed a legal action against his former employer which in due course was resolved. After leaving Griggs and Browne, the defendant, in company with another, initiated a business involving the sale of used automobiles. CT Page 12794
The plaintiff voiced her concern and objections to this course of conduct on the part of the defendant feeling that this type of business was unstable and was not in the best interest of the family. However, in describing the defendant's financial status, the plaintiff testified that on various and diverse occasions that the defendant would have a substantial roll of currency in his pocket and that he paid bills of the home in cash.
In 1998 the plaintiff terminated filing joint income tax returns with the defendant. The plaintiff filed her 1999 IRS return in June of 2001. The plaintiff was expected to receive a certain refund with regard to that return in the amount of $5,491.00 but because of other obligations of the defendant, the same was never made available to her. The contemplated refund went to pay for tax liabilities for 1997 owed by the defendant.
The plaintiff's testimony is to the effect that the defendant has never reimbursed her for the $5,491.00 or any portion thereof.
The minor child Isabelle presently resides with the plaintiff and has for some time.
As earlier noted in the review of the file, the support order by the court, Devine, J., was to the amount of $47.00. The testimony indicated that on one occasion the defendant paid the plaintiff said sum in pennies.
Apparently the support payments have been sporadic and substantial intervals of time would go by and then the defendant would cure the arrearage by making a check in an amount necessary to do that.
During the union, the defendant had an account with a firm known as Quick and Reilly and there was an account entitled a "Galaxy" account. The plaintiff indicated that she never saw or was privy to these accounts or statements.
In June of 1999, the present marital residence was purchased. Apparently at one point in time, the defendant invested in various stock market transactions with his retirement funds. The plaintiff testified that at one time the defendant had told her that his stock funds were worth $80,000.00.
The plaintiff's testimony was to the effect that the defendant paid the mortgage on the marital home for the first month after he left but thereafter discontinued the same. CT Page 12795
The plaintiff's lament included her claim that the defendant threatened her and indicated that he would destroy and ruin her; this representation, according to the plaintiff, as recent as within the last two weeks.
An appraisal of the marital home was undertaken and constitutes an exhibit which the court will touch on in due course.
The testimony indicated that the defendant had also hired an appraiser but no exhibit was offered and the court notes that no appraiser during the pendency of these proceedings appeared in person, and whatever information or evaluation was made was within the confines of agreed exhibits presented to the court.
The plaintiff's testimony was to the effect that the Jewett City Savings Bank was and presumably is willing to give her a mortgage in a refinance of the premises.
The subject marital home was originally purchased for $99,000.00 and the plaintiff is desirous of retaining the home for herself and the minor daughter Isabelle.
The plaintiff testified that she makes no claim with regard to the defendant's interest in the PD Auto Sales entity.
The plaintiff described problems in the marriage as in part being within the realm of intimate relations.
In 1998 the defendant had initiated a petition seeking a dissolution but the same was not pressed to a conclusion and eventually was withdrawn.
The plaintiff at one point in time apparently had a co-worker friend but her testimony was to the effect that no improprieties occurred; notwithstanding, one of the exhibits that was presented to the court.
In February of 1999, the defendant had moved back after the withdrawal of the first divorce petition and left again as indicated in March of 2001. The plaintiff and the defendant have now been separated for 1-1/2 years and it would appear that the marriage has irretrievably broken down.
At one time due to anxiety problems, the plaintiff was hospitalized at Backus Hospital for a period often days. CT Page 12796
The plaintiff is presently working reduced hours and in the last two years the plaintiff has taken medication intermittently with regard to anxiety problems.
The plaintiff is engaged in counseling with regard to the adult son Carl. Prior to his conflicts with the law, the son Carl lived with the plaintiff and his sibling sister and on occasion the adult child Carl lived with the defendant and a friend of the defendant's.
The plaintiff, apparently for many years in the past, was involved in church matters and was a member of the vestry of the church to which she belonged.
Over the years during the marriage, the plaintiff and the defendant had a variety of homes including some that were income-producing.
Within the last year, the plaintiff indicated that she had three separate bouts with pneumonia. She takes medication including Klonotin and Paxel. Her testimony was to the effect that the adult son Carl has been diagnosed as having a bipolar disorder and that he unfortunately had experienced problems in the past as concerns alcohol and substance abuse.
The daughter Isabelle, as indicated, attends Norwich Free academy where she is a junior; she has some health problems including migraine headaches and asthma.
The plaintiff's education involves her being currently in college at Three Rivers presumably on a part-time basis. She seeks a degree. She attends classes there at night.
The plaintiff indicated that as between herself and the defendant that alcohol was not a severe problem; that there were no problems with regard to substance abuse and that there was no overt physical violence. The parties however were unable to agree on standards of behavior.
At one point in time the plaintiff felt the necessity of securing a restraining order against the adult son Carl as concerns his conduct with his sibling sister Isabelle. This created further tensions and upset in the home.
In addition to her participation at Norwich Free Academy as a junior, the minor child Isabelle takes courses at Three Rivers University and is considered an honor student. The child Isabelle took the SATs and CT Page 12797 apparently, according to the testimony, did well.
Notwithstanding some of the testimony or a particular exhibit, it is the plaintiff's claim that she has been faithful and never strayed from the fold.
The plaintiff indicated that the defendant endeavored to make known to the minor daughter Isabelle a certain exhibit but the testimony is in conflict incident thereto. According to the testimony of the defendant, his age is 46, he was born in Providence,
Rhode Island on October 29, 1955. Although he described his health as good, he indicated that he is on a regimen of medication including Welbritene, Celasa and Zanex. He has been under the intermittent care of a physician since 1998.
The defendant testified that he is in fact current with regard to the order of support although admittedly that was achieved from time to time by remittances on a somewhat erratic basis.
On May 7, 2001, the defendant's wrongful termination action against Griggs and Browne was resolved for and in consideration of the settlement sum of $10,000.00. After the payment of various and sundry charges incident thereto, presumably in attorney's fees, the defendant ended up with $4,800.00.
Even while the minor daughter Isabelle has been residing with the plaintiff, there was a period of time where the defendant would transport the daughter to and from school. The defendant apparently has a reasonably good ongoing relationship with the minor daughter Isabelle.
The daughter Isabelle stayed with the defendant during a three or four-week period of time when the plaintiff was in the hospital.
Although there was testimony as concerns the circumstances pertaining to the adult son Carl's present problems, the court sees no necessity for dwelling thereon.
The defendant has been assisting his son including the payment of attorney's fees for counsel that represents the child.
During the life of the marriage on at least two occasions in 1985 and 1986, the plaintiff and the defendant traveled together to Hawaii.
As indicated, during the life of the marriage several homes have been CT Page 12798 purchased; some were rented and rehabilitated in addition to the defendant's work with Griggs and Browne, which apparently was of a maintenance and construction oriented type of business.
Until 1998, the defendant was a manager at one of the Griggs and Browne location.
The defendant collected unemployment benefits in 1998. The defendant has a college degree majoring in history secured from the University of Rhode Island.
At one point in time, the plaintiff and the defendant owned three different residences; subsequently, two that were being rented were sold.
The $20,000.00 down payment for the current residence of the parties apparently came from a wire transfer from Quick and Reilly, an account maintained by the defendant to Dime Savings Bank and then used for the purpose of the purchase. The defendant also represented that he had done considerable work on the home and residence of the parties. The defendant's testimony was to the effect that as a result of transfers from his account with Quick and Reilly that as much as $23,770.00 went into the purchase of the home at 24 Huntington Place.
As concerns the defendant's present business activity, a license incident thereto was secured in March of 1998.
The defendant, in company with another, engages in the sale and repair of used automobiles.
The counseling that the family engaged in was initiated as far back as the early 1990's.
The defendant engaged in individual counseling beginning in 1997.
When the defendant originally left the marital home, he moved in with his parent mother for a short term.
The subject home and residence apparently is now or will be shortly within the designated confines of a historical district.
The defendant offered his lay opinion as to the value of the home and residence and stated that he felt that the same was worth $170,000.00.
The defendant is desirous of having the court continue the outstanding CT Page 12799 $47.00 a week support order as concerns the minor child Isabelle and the defendant is desirous of having the court retain jurisdiction with regard to future educational support orders in accordance with the recentPublic Act 02-128.
Medical insurance for the minor daughter Isabelle and presumably for the adult son Carl is presently provided by the plaintiff incident to her employment and the defendant is desirous of having the plaintiff continue that insurance coverage.
There are apparently some present problems involving the plaintiff and the defendant as concerns taxes due and owing to the State of Connecticut as concerns the used car business conducted by the defendant.
The defendant's position is to the effect that the breakdown of the marital union resulted from the plaintiff's straying from the fold; however, the court notes that the only witnesses who testified in this lengthy proceeding were the plaintiff and the defendant and no third parties appeared to testify.
At one point in time, the defendant's mother apparently was ill and treated at a hospital in Rhode Island. It was hoped or contemplated that she might come and reside with the plaintiff and the defendant but the plaintiff steadfastly refused to consider anything in that respect. There was apparently some hostility between the plaintiff and the defendant's parent mother.
The defendant's attitude is to the effect that all of the residences purchased over the years prior to the present marital home were as a result of his efforts or assistance by his family.
Since the separation, the defendant testified that he has made payments as concerns obligations to Conseco, Home Depot, Mastercard and Sears.
As indicated, he has been paying the adult son Carl's legal bills and charges and the defendant represented that he has purchased clothing for the minor child Isabelle.
The defendant acknowledged living with a friend but as indicated the only witnesses in this proceeding were the plaintiff and the defendant. There were however of course many exhibits that were presented for the court's consideration.
The court was advised as to the intellectual abilities of the son Carl and the present educational status of the daughter Isabelle. It would CT Page 12800 appear that both children according to the parents are intellectually gifted and both parents are desirous of doing what they can in the future for the continued education of the two children.
Review of the Plaintiff's Exhibits
During the conduct of the proceedings, the plaintiff through counsel offered 20 exhibits to the court. The court will address them in their numerical sequence.
Plaintiff's Exhibit 1 is a document entitled "Thoughts for Thursday, 7/28/93". This was a typed document prepared by the defendant with regard to problems in the marital relationship perceived at that time. The exhibit addressed issues of intimacy, stress, financial problems, problems pertaining to the home and the size thereof, made observations as to what the parties might better do together, the needs of the children. A portion of the exhibit is written in hand. It apparently was created out of a concern for the deterioration of the marital union.
Plaintiff's Exhibit 2, a document from the Internal Revenue Service entitled "Monthly Statement," made out in the name of the plaintiff and the defendant indicating as of 12/31/97 that there was $5,112.67 due. The exhibit purports to show that the same has been paid and discharged. The balance shown on the exhibit itself was $150.00.
Plaintiff's Exhibit 3, United States Individual Income Tax return for calendar 1999 filed in the name of Louise B. Delvecchio only; showing wages of $34,933.00; total income of $35,566.00 and the tax computation and the amount to be refunded to the plaintiff, which as touched upon earlier in the opinion, was taken and offset joint debts for earlier years. The 1999 form Connecticut 1040 E-Z is also attached with substantially the same figures.
Plaintiff's Exhibit 4, statement from the firm of Quick and Reilly entitled, "Portfolio Summary," indicating on the face thereof as of the 12/31/99, total account equity closing balance $23,770.77. This account is in the name of Carl J. Delvecchio only and is the result apparently of an IRA rollover.
Plaintiff's Exhibit 5 is a document entitled, "Register (Bad Debt)." Register through 12/31/2000 and sets forth a chronology of dates, name of obligor on accounts receivable, the amounts thereof, and balance shown. This apparently pertains to the business entity known as PD Auto and also attached to the exhibit is an inventory of automobiles purchased and the price thereof apparently for the purpose of the business. CT Page 12801
Plaintiff's Exhibit 6 is a document entitled, "Account History," as concerns a "Galaxy" account maintained and under the control and direction of the defendant. It sets forth a series of dates and description of funds and values incident thereto. The exhibit sets forth debits and credits and does not lend itself overly well to interpretation. There are with the exhibit additional documents entitled, "Galaxy account, #13197856," for the period 1999-2001 setting forth debits and credits, distribution, and a further account history with regard to checks, dividends, the wiring of funds and matters of like nature.
Plaintiff's Exhibit 7, again an account history of the Galaxy fund maintained by the defendant setting forth credits and debits on a variety of dates showing journal entries, sales, what is entitled as "Sweep", items purchased, wired, and matters of like nature. The same consisting of seven pages. The last figure indicating a zero balance as of 9/4/2001.
Plaintiff's Exhibit 8, 1997 U.S. individual income tax return for Carl J. Delvecchio and Louise B. Delvecchio showing total wages and salaries of $68,660.00, other income, dividends, a capital gain so that the total adjusted gross income for that year for the plaintiff and the defendant was $77,236.00. Schedule D of that exhibit reflected various sales of securities. The sales price being $86,900.00, cost or other basis, $79,134.00 for a long-term capital gain of $7,766.00. Also attached to the return was a W-2 for Louise Delvecchio showing wages of $29,245.00 and for the defendant at Griggs and Browne for that year $39,413.00.
Plaintiff's Exhibit 9 is a letter written in the hand of the defendant directed to the plaintiff commenting on the problems that exist between them and wherein the defendant professes his continuing and abiding affection for the plaintiff and represents that change will be undertaken in order to try and salvage the relationship.
Plaintiff's Exhibit 10 is another document written in the hand of the defendant addressed to the plaintiff on an occasion when he visited the marital home after having left the same and in which the defendant professes continued concern for the welfare of the plaintiff and the children. In the latter part of said exhibit, the defendant in effect asks for further opportunity to try and preserve the union.
Plaintiff's Exhibit 11 is a summary appraisal report of property at 24 Huntington Place in Norwich done by William Champagne for the Jewett City Savings Bank as of May 30, 2001. This appraisal was done at the request CT Page 12802 of the plaintiff incident to an application she was making to Jewett City Savings Bank incident to refinancing on the home. It is the court's impression that the bank approved her application but the matter was not finalized. On this appraisal the appraiser found the value of the subject premises to be $140,000.00. The appraisal appears to be detailed, reflects comparables, contains photographs in color and photographs of comparables and other collateral, material. The appraisal seems well done.
Plaintiff's Exhibit 12, a document entitled, "Property Location, 24 Huntington Place," presumably done for the City of Norwich, Department of Assessment in which current assessment exhibit is a total appraised value of the property for that purpose of the City of Norwich is $103,100.00.
Plaintiff's Exhibit 14, a vocational assessment, employability and earning capacity evaluation regarding the defendant performed and conducted by Paul F. Murgo whose qualifications are set forth within the confines of the exhibit indicating an evaluation and assessment by the evaluator Murgo of the defendant and in which exhibit there is a commentary entitled, "Overview," the education of the defendant, vocational testing and the results thereof, vocational status, earning capacity, and matters of like nature. From said exhibit in Category 5 the examiner states, "clearly Mr. Delvecchio's current earnings are not a fair and accurate representation of his true earning capacity." The examiner then refers to the authorities on which he relied for that assessment.
Plaintiff's Exhibit 15, a list of items and claimed value thereof of items of personal property as best the court can devine removed from the marital home and residence on an earlier date by the defendant.
Plaintiff's Exhibit 16, various and sundry documents from the Dime Savings Bank indicating a history of savings account activity and matters of like nature. It was into the Dime Savings Bank that the funds that were wired from Quick and Reilly were deposited. This account at Dime Savings Bank stood in the name of Carl J. Delvecchio.
Plaintiff's Exhibit 18, a financial affidavit prepared and filed by the defendant under date of 6/18/2002 presumably presented to the court incident to earlier pendente lite motions in which financial affidavit the defendant indicates that his gross weekly wage from his employment is $300.00, deductions of $60.95 for a net of $239.05. The affidavit reflects weekly expenses of $533.04; debts totaling $46,802.48. This exhibit values the property at 24 Huntington Place in Norwich at $170,000.00, which is in keeping with the defendant's lay opinion as to its value, showed a mortgage of $80,000.00 for allegedly an equity of CT Page 12803 $90,000.00. As to motor vehicles, a 2001 motorcycle valued at $11,000.00, equity 0, home furnishings and so forth, $2,000.00, $500.00 in the Dime Savings bank, no other appreciable assets.
From Plaintiff's Exhibit 19, a letter directed to the defendant as concerns partner share of income with regard to the partnership known as PD Auto, LLC. There is attached thereto the U.S. return of partnership income for the year 2000 indicating for the business. which is located at 138 Norwich Avenue in Norwich, gross receipts or sale of $212,318.00. Notwithstanding the amount of the gross sales, the return reflects a loss for that tax year predicated upon salaries, bad debts, rent, taxes and license and matters of like nature. This return shows a figure on line 10 thereof entitled, "Guaranteed Payments to Partners," of $31,200.00.
Plaintiff's Exhibit 20, business checking statement from People's Bank pertaining to PD Auto, 138 Norwich Avenue, Norwich. This is a lengthy document setting forth credits and debits which is not easily understood. The last page of that exhibit shows a series of dates beginning with 1/31/2002 and running through 5/30/2002 showing deposits and withdrawals so that for the subject period totals for 2000 deposits of $159,223.47, withdrawals of $160,433.70.
From the Defendant's Exhibits
Defendant's Exhibit A is a series of contacts secured over the internet or e-mail sent to the plaintiff by a friend and at least in one instance a reply made by the plaintiff. No useful purpose is served by addressing the content thereof, due to the intimate nature thereof.
Defendant's Exhibit B is a form indicating and verifying the price paid for the house at 24 Huntington Place and any terms or conditions incident thereto. The sale date was June 29, 1999. The exhibit contains a black and white photograph of the residence.
Defendant's Exhibit C, an inventory statement from PD Auto entitled, "Item Listing, June 24, 2002," containing a number of serial numbers for the inventory of motor vehicles held as of that date for sale by PD to buyers.
Defendant's Exhibit D is an item listing dated September 26, 2002, again listing a variety of used automobiles held by PD for sale indicating the year thereof, make and the prices set forth to be exposed to the market.
Defendant's Exhibit F is a blank Source One Financial Corporation form CT Page 12804 which apparently was offered solely to indicate or disclose to the court how financing with regard to PD Auto is ordinarily handled.
Defendant's Exhibit F, Source One Financial condition dated 9/24/2002 concerning a certain Jeep Cherokee motor vehicle, the breakdown as to cost, retail price, sales tax, down payment and all allied items and terms and conditions resting on PD with regard to Source One as concerns the subsequent sale of the vehicle or the responsibility for carrying charges.
Defendant's Exhibit G, City of Norwich Historic District Commission offered to indicate to the court that the subject marital home property is presently located within a neighborhood rehabilitation program.
Defendant's Exhibit H is to the same effect indicating that the subject premises apparently now fall within the confines of a historical district.
Review of Financial Affidavits
The plaintiff petitioner filed a financial affidavit bearing date of September 27, 2002 with the court at the time of trial. From that financial affidavit, the court observes and finds that the plaintiff is employed by Dominion Nuclear of Waterford, Connecticut. Her gross weekly income is $1,157.05. Various deductions, primarily federal, state taxes, FICA, health insurance, etc., total $380.79 for a net weekly wage of $776.26. Child support on the basis of a relatively longstanding order, $47.00 a week. Total net income, $823.26. Claimed expenses, $898.81. Debts totaling $40,606.00. The debts include monies due and owing to the plaintiff's mother, Louise Behan, in the amount of $33,697.00. The plaintiff values 24 Huntington Place at $140,000.00; mortgage, $78,000.00, for an equity of $62,000.00; that, of course, is the total equity. A 2001 Honda with a minus equity of $2,000.00; household furnishings valued at $7,500.00; modest sums in the bank totaling $3,154.00; a Quick and Reilly account valued at $500.00 and apparently a Dominion Nuclear pension vested at a later point in time, which would provide the plaintiff with $157.00 a month.
From the defendant's financial affidavit, the court finds that he is a manager/owner of PD Auto, LLC located in Norwich; that his gross weekly wage as shown on the financial affidavit is $300.00; tax deductions totaling $60.95 for a net of $239.05. No other income is shown. Weekly expenses claimed, $533.04. Total debt reflected, $44,602.48. The major portions of the debt refer to a motorcycle and business debts, Chase Mastercard, Conseco debt and a Sears debt. CT Page 12805
The defendant values the property at 24 Huntington Place in Norwich at $170,000.00 with a mortgage of $80,000.00, claiming a total equity of $90,000.00. A 2001 roadster motorcycle valued at $11,000.00, zero equity; household furnishings, $2,000.00; Dime Savings Bank, $500.00; stocks, $100.00; no other assets shown or disclosed. The court notes that a guideline worksheet was submitted to the court by counsel for the plaintiff and that guideline worksheet purports to indicate that the gross weekly income of the defendant is $865.00 presumably on the basis of the Murgo exhibit indicating the defendant's earning potential.
The court assumes that that figure is based upon Plaintiff's Exhibit 14, a report by Paul F. Murgo, vocational assessment counselor. The exhibit is dated July 11, 2002 and wherein Murgo indicated that a motor vehicle dealer involved in new or used automobiles averaged annually an income of $37,520.00 in the industry or managerial positions consistent with the defendant's prior position with Griggs and Browne at $52,650.00 as a manager. The court notes that Plaintiff's Exhibit 14 was submitted by agreement by both counsel but the witness Murgo did not personally physically appear and the court had no opportunity to question him. The defendant by counsel did not submit a guideline worksheet regarding support as best the court can devine.
 The Law
The court has jurisdiction in this matter, both of the parties being physically present before the court and both of the parties being represented by counsel of record.
In reviewing the file, the court notes that the writ, summons and complaint initially was on a pro se basis initiated by the plaintiff Louise Delvecchio and as best the court can devine, although there were many motions thereafter, no answer and cross complaint was ever filed.
As to the issue of jurisdiction see Connecticut General Statutes §46b-44 (c).
It would appear that the initial pro se complaint conformed to §46b-43.
Reference is also made to Connecticut General Statutes § 46b-40 as concerns the grounds on which the petition is based.
It would appear that the parties are in accord with regard to custody as to the one remaining minor child Isabelle, reference being made to CT Page 12806 § 46b-56 (b), and presumably the parties have taken into consideration all of the usual criteria with regard to suggesting to the court what is in the best interest of the child Isabelle.
The court has considered §§ 46b-83, 46b-84 with regard to support, § 46b-83 as to alimony and § 46b-62 as concerns counsel fees.
The court has endeavored to consider all relevant criteria in considering resolving the issues as to property, alimony, support and matters of like nature.
The court has considered all of the applicable case law that governs a matter of this nature. The court has considered the testimony of the parties, their candor or lack thereof, the voluminous exhibits submitted on both sides.
In considering the issues, the court is mindful of the requests set forth in the proposed orders by counsel for the respective parties. The court has also reflected upon the length of the marriage, the cause of the breakdown, the age, health, station, occupation, education and employability of each of the parties and the estate and needs of the parties.
The court has considered the respective financial positions of the plaintiff and the defendant as elicited at the time of trial and predicated upon their respective financial affidavits, their prospects for future income and opportunity.
 Discussion
This is a marriage of 21 years. There are two children issue of the marriage. One child has now attained his majority and unfortunately is beset with legal problems of his own.
The one minor child Isabelle is age 16, apparently is doing well at the Norwich Free Academy as a junior and apparently, also from the testimony, is intellectually gifted.
The plaintiff's present employment goes back over a period of at least six years and apparently the plaintiff does fairly well financially. She is 42 years of age. Some health problems and therapy have already been touched upon.
The defendant had long-term employment with the firm of Griggs and Browne extending over a period of 17 years. Admittedly from the CT Page 12807 testimony, his loss of that position was not his fault.
The court notes that again the only witnesses were the plaintiff and the defendant. The plaintiff s friend referred to in Defendant's Exhibit A was not called.
The court has already touched upon the educational status of the parties including the fact that the defendant has a college degree.
The court enters the following orders.
On the basis of the testimony adduced at time of trial, the court finds that the marriage has irretrievably broken down with no reasonable prospect for reconciliation and therefore grants a dissolution of the same on the grounds of irretrievable breakdown.
The court grants joint legal custody of the minor child Isabelle with the plaintiff parent mother being the primary physical custodian and granting the defendant reasonable rights of visitation.
Child support as concerns the minor child Isabelle shall be $117.00 per week predicated upon Plaintiff's Exhibit 14 and the guideline worksheet submitted by the plaintiff.
The plaintiff claims an arrearage at time of trial in the amount of $94.00. The defendant's claim and position is to the effect that the support is current. Therefore, the court directs that the defendant shall provide evidence that the same in fact is current as of time of trial and, in the event that that does not occur, the defendant shall thereafter within 30 days cure any deficiencies that then exist to the amount of $94.00.
Mindful of the length of the marriage but mindful of the request made by the plaintiff and urged on the court by plaintiff's counsel, the court will award alimony in the amount of $1.00 a year, which shall remain and continue until the defendant pays off certain debts including the current outstanding debt to Chase MasterCard, Conseco, Sears and Home Depot. At such time as those debts shall have been fully paid and discharged, the periodic alimony of $1.00 a year shall terminate. Subject to the above, the alimony shall be non-modifiable as to duration and modifiable in amount only for the purpose of carrying into full force and effect the foregoing as concerns the payment of the stated debts. The plaintiff shall be responsible for the debt to her mother.
The aforementioned alimony shall earlier terminate on the death of CT Page 12808 either the plaintiff or defendant, the plaintiff's' remarriage or cohabitation as defined by statute.
The court enters no order as to attorney fees and each party shall be individually responsible therefore.
Each of the parties, except for the debts already touched on, shall pay those debts listed on their respective financial affidavits and hold the other harmless therefrom.
Because of her present employment position and situation, the plaintiff shall continue to maintain medical insurance coverage for the minor child Isabelle. Should the defendant secure medical insurance coverage then that issue may be subsequently addressed. Any unreimbursed medical, dental, orthodontic, optometric, counseling or other health-related expenses of the child shall be apportioned equally between the parties after the implementation of the medical insurance noted above.
The court has been requested to enter an order with regard to life insurance as concerns the minor child but no evidence has been presented to the court as to the availability thereof and the health status of the defendant as to insurability and therefore the court declines to enter any order incident thereto, it may however be raised at a later date.
As to the real estate located at 24 Huntington Place in Norwich, the defendant shall execute a good and sufficient quit claim deed conveying his equity interest in the premises located at 24 Huntington Place to the plaintiff and the plaintiff shall be required to assume, pay and discharge any indebtedness due and owing to any bank holding a mortgage on the same and to indemnify and hold harmless the defendant therefrom. In consideration of this transfer, the plaintiff shall give and grant to the defendant a mortgage in the amount of $20,000.00. The plaintiff, as indicated, shall execute and grant to the defendant a mortgage in the amount of $20,000.00 payable when the remaining minor child Isabelle reaches age 18 or in the event that the plaintiff sells the marital residence or ceases to use the same as her primary residence or refinances, whichever event may first occur. This obligation shall be secured by mortgage deed and note, interest free.
As concerns the defendant's request to remove certain items of personalty as reflected upon his pre-trial proposed orders submitted through counsel, in the event that the parties cannot agree as concerns said items, the matter may be referred for arbitration. The results thereof to be binding upon the parties. CT Page 12809
The plaintiff may retain the automobile which she presently has and the modest bank accounts reflected on her affidavit, the household furnishings, except as concerns those items that may be in conflict, which shall be the subject of arbitration. The plaintiff may retain her Northeast Utilities pension.
The defendant may maintain and retain his interest in PD Auto, LLC and any assets related thereto. He may retain the household furnishings that were earlier removed from the marital home, any bank account which he has, his motorcycle, any remaining Quick and Reilly securities, and any funds remaining from the rollover of his IRA. The defendant may also retain whatever remaining proceeds there may be as concerns the settlement effected against his former employer Griggs and Browne.
Each party shall pay their own counsel fees. The plaintiff shall cooperate and assist the defendant with regard to medical coverage for the defendant incident to her medical coverage incident to her employment. The cost however to be borne by the defendant.
Mindful of the joint requests or joint petitions of the plaintiff and the defendant, after inquiry of them, the court will retain jurisdiction as concerns prospective educational support orders pursuant toPublic Act No. 02-128 and will enter an order for purposes of keeping that option open as to both the plaintiff and the defendant and both of their children even though the child Carl is over 18, both of the children being under age 23, in order that in due course they may have the opportunity to make whatever request they feel is appropriate and proper as concerns matters of higher education for their two children mindful of the criteria set forth within Public Act No. 02-128 and the requirements thereof.
The court enters an order of $100.00 a year to be paid by each party into a fund or account until such time as the court may enter orders at the request of the parties or until the youngest child shall attain age 23 pursuant to the provisions of the statute.
Austin, J. CT Page 12810